UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Burnsville Sanitary Landfill, Inc.,
and Waste Management, Inc.,

Plaintiffs,

v.

Civ. No. 02-273 (JNE/JGL)
ORDER

Edward Kraemer & Sons, Inc.,

Defendant.

---

Jack Y. Perry, Esq., and Matthew Slaven, Esq., Briggs and Morgan, P.A., appeared for Plaintiffs Burnsville Sanitary Landfill, Inc., and Waste Management, Inc.

Joseph T. Dixon, Jr., Esq., Matthew Morgan, Esq., and Stuart T. Williams, Esq., Henson & Efron, P.A., appeared for Defendant Edward Kraemer & Sons, Inc.

---

This action arises out of the sale of a landfill by Edward Kraemer & Sons, Inc. (Kraemer) to Burnsville Sanitary Landfill, Inc., and Waste Management, Inc.[1] (collectively, Plaintiffs). Plaintiffs claim that Kraemer unlawfully buried waste in the landfill before the sale and that Kraemer is liable for the damages incurred by Plaintiffs in cleaning up that waste. Plaintiffs allege six causes of action against Kraemer: Count I seeks a declaratory judgment; Count II is for breach of contract; Count III asserts breach of common law warranty; Count IV alleges fraud; Count V alleges fraudulent concealment; and Count VI seeks reformation of the parties' land-sale agreement (Agreement) because of mistake. The case is before the Court on Kraemer's motion for summary judgment on all Counts, and Plaintiffs' motion for partial summary judgment on Counts I, II, and III. For the reasons set forth below, the Court grants Kraemer's motion and denies Plaintiffs' motion.

---

[1] At the time of the land sale, Waste Management was known as USA Waste.

## I. BACKGROUND

In 1997, Plaintiffs purchased a 147.6-acre landfill located in Dakota County, Minnesota, from Kraemer. The landfill consists of two areas. The active landfill area, for which Kraemer first acquired permits in 1971, encompasses 99 acres. The expansion area, for which Kraemer obtained permits in the early to mid 1990s, includes the remaining 48.6 acres.

Negotiations between Plaintiffs and Kraemer for the sale of the landfill commenced in 1996. Prior to the closing, the parties agreed on a review period to allow Plaintiffs to examine the land and to identify and analyze all of the historical information[2] relating to the landfill. On July 31, 1997, pursuant to the Agreement and after Plaintiffs' review period, Plaintiffs purchased the landfill from Kraemer for $23.5 million.

In June 2000, Plaintiffs began excavating the expansion area to develop it into a working landfill. In the process, Plaintiffs discovered that waste, primarily construction debris, had already been buried in the expansion area. As a result of the waste, Plaintiffs incurred additional costs in preparing the expansion area. Plaintiffs then conducted an historical aerial survey of the expansion area over a period from 1970 through 1997. The survey revealed that approximately 45,000 cubic yards of waste had been disposed of in the expansion area between 1970 and 1997. On September 7, 2001, Plaintiffs informed Kraemer of its claims arising from the clean up and disposal of the waste. Kraemer denied that it was liable to Plaintiffs under the terms of the Agreement, and Plaintiffs brought the instant action.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

---

[2] Specifically, section 5.1 of the parties' land-sale agreement states: "The parties agree that there is substantial historical information existing which bears on the environmental condition (hereinafter defined) of the Land, the Permits and the Regulations (such information being hereinafter collectively referred to as the 'Historical Information')."

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A. Declaratory judgment, breach of contract, and breach of warranty**

The parties agree that the expansion area contained waste at the time of sale, and dispute whether Kraemer disclosed the waste's presence. Kraemer asserts that the waste was disclosed in the historical information, and Plaintiffs therefore assumed liability under Article 6 of the Agreement. Plaintiffs assert, to the contrary, that Kraemer failed to disclose the waste in the historical information and thereby breached warranties, specifically sections 6.9(b), 6.15(i), 6.16, and 6.20(c) of the Agreement. In addition, Plaintiffs argue that Article 11 of the Agreement assigns liability to Kraemer for the disputed waste independent of Article 6. To resolve the claims for declaratory judgment, breach of contract, and breach of warranty, the Court first looks to whether the historical information disclosed the presence of waste in the expansion area and then to the language of the Agreement.

*1. Disclosure*

Prior to closing, Plaintiffs had the opportunity to inspect the land, interview Kraemer employees, and examine documents relating to the property as a whole. The collection of documents reviewed was cataloged as historical information and made part of the Agreement. Article 6 of the Agreement provides:

> As used in this Agreement, the phrase 'disclosed by the Historical Information' includes matters stated and shown within the Historical Information and matters which may be reasonably inferred from matters stated and shown by professionals knowledgeable in Environmental Laws, Environmental Conditions and the Permits and the Regulations.

Among the documents contained in the historical information are the 1993 Phase II Hydrogeologic Evaluation of the Expansion Area (Phase II Report) and the September 1991 Metropolitan Council's Draft Environmental Impact Statement (Draft EIS). Kraemer asserts that these two documents disclose the presence of the waste in the expansion area.

With regard to the Phase II Report, the record contains deposition testimony from two Minnesota Pollution Control Agency (MPCA) hydrogeologists, Kurt Schroeder and Neal Wilson. Both were involved in the permitting process for the expansion area in the early 1990s. After reviewing the Phase II Report, Schroeder and Wilson testified that sections of the Phase II Report disclosed the presence of waste in the expansion area. As hydrogeologists, they are qualified to review the Phase II Report, and routinely engage in review of such phase II surveys in their profession. Instead of providing experts who deny that the Phase II Report discloses waste in the expansion area, Plaintiffs argue that the Phase II Report could not have disclosed the waste because the MPCA approved permits for the expansion area. According to Plaintiffs, if the Phase II Report revealed the waste, MPCA would have required clean up before granting a permit. The appropriateness of the MPCA's permitting procedures is not at issue. Accordingly,

based on the testimony of Schroeder and Wilson, the Court concludes that the historical information disclosed the presence of waste in the expansion area.[3]

*2. Interpretation of the Agreement*

Under Minnesota law, the interpretation of an unambiguous contract presents a question of law. *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn. 1990). A court must construe a contract as a whole and attempt to harmonize all of its clauses. *Chergosky v. Crosstown Bell*, 463 N.W.2d 522, 525 (Minn. 1990). The Court's review of the Agreement reveals that it is an unambiguous contract.

The Agreement consistently delineates limits on liability issues relating to environmental impairments, permits, and regulations dealing with the land (collectively, environmental concerns). The parties agree that the waste in the expansion area constitutes an environmental concern. Article 6, titled "REPRESENTATIONS AND WARRANTIES OF SELLER," provides:

> The warranties by Seller set forth in this article . . . shall not extend to any matter which is disclosed by the Historical Information or which is within the knowledge of Buyer at the end of the Review Period. Seller, with the exception of the express warranties set forth in this Article 6, hereby disclaims and negates any representation or warranty of any kind whether express or implied, relating to the Environmental Condition of the Land (which Buyer will otherwise accept as is on the Closing Date or relating to the Permits or Regulations).

Plaintiffs assert that Kraemer breached several of the enumerated warranties of Article 6, specifically, sections 6.9(b), 6.15(i), 6.16, and 6.20(c). Given that the historical information disclosed waste in the expansion area, the warranties in Article 6 do not extend to the disputed waste. Accordingly, Kraemer is entitled to summary judgment insofar as the claims are based on Article 6.

---

[3] Because the Phase II Report disclosed waste in the expansion area, the Court need not

Turning to Article 11, section 11.1 provides in relevant part:

> Non-Assumption of Liabilities. Except as explicitly set forth in Section 11.2 below, Buyer shall not, by the execution and performance of this Agreement or otherwise, assume, become responsible for or incur any liability or obligation of any nature of Seller or David R. Kraemer whether legal or equitable, matured or contingent, known or unknown, foreseen or unforeseen, ordinary or extraordinary, patent or latent, whether arising out of or relating to: . . . .b) injury to or death of any person or damage to or destruction of any property, whether based on negligence, breach of warranty or any other theory; c) violation of the requirements of any governmental authority or of the rights of any third person, including without limitation, any requirements relating to the reporting and payment of federal state, local or other income, sales, use, franchise, excise or property tax liability; . . . . Seller hereby agrees to indemnify Buyer, its successors and assigns from and against all of the above liabilities and obligations in accordance with Article 12 below.

Plaintiffs argue that Kraemer is liable for the waste under Article 11 because the waste constitutes damage and destruction to property under section 11.1(b) and a violation of tax requirements under section 11.1(c).

Section 11.1 unambiguously distinguishes between the liabilities of sections 11.1 and 11.2, and provides that Plaintiffs do not assume any of the enumerated 11.1 liabilities, except those set forth in 11.2. Section 11.2(i) provides:

> Assumption of Specific Obligations. (i) Buyer agrees to assume and perform to the extent, and only to the extent such obligations first mature and are required to be performed subsequent to the close of business on the date of closing:
>
> ….
>
> f) all of Seller's liabilities, loss or expense which Buyer or its successors and affiliates may incur relative to Seller's operation of the Landfill, any Environmental Conditions, or related to the Permits or Regulations, regardless of when the events giving rise to such liabilities, loss or expense may have occurred (provided, however, that Buyer's assumption of liability hereunder shall not extend to any liability, loss or expense which is a breach by seller of any representation or warranty contained in this Agreement).

---

consider the parties' arguments regarding the Draft EIS.

Because section 11.2(i)(f) addresses liabilities relating to environmental concerns, and the parties agree that the disputed waste is an environmental concern, section 11.2(i)(f) controls liability for the disputed waste.

As such, section 11.2(i)(f) provides that Plaintiffs assume responsibility for any loss or expense incurred after closing that relates to the operation of the landfill—specifically environmental concerns—regardless of when events giving rise to the liabilities occurred, *except* for due to a breach of representation or warranty by Kraemer. Contrary to Plaintiffs' assertion, section 11.2(i)(f) must be read in conjunction with Article 6 because Article 6 explicitly governs all representations and warranties addressing environmental concerns. Because the Court has already concluded that there was no breach of Article 6 representations and warranties, there is no breach under section 11.2(i)(f).

In sum, Kraemer is not liable for clean up of the disputed waste under either Article 6 or Article 11 because Plaintiffs assumed liability for environmental concerns disclosed in the historical information. Accordingly, the Court grants Kraemer's motion for summary judgment insofar as it addresses Plaintiffs' declaratory judgment, breach of contract, and breach of warranty claims and denies Plaintiffs' motion for partial summary judgment.

**B. Fraud and Fraudulent Concealment**

Under Minnesota law, the elements of a cause of action for fraud are: (1) there must be a representation; (2) that representation must be false; (3) it must have to do with a past or present fact; (4) that fact must be material; (5) it must be susceptible of knowledge; (6) the representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false; (7) the representer must intend to have the other person induced to act, or justified in acting upon it; (8) that person must be so induced to act or so

justified in acting; (9) that person's action must be in reliance upon the representation; (10) that person must suffer damage; (11) that damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury. *Davis v. Re-Trac Mfg. Corp.*, 149 N.W.2d 37, 38-39 (Minn. 1967). Concealment of a material fact can also constitute fraud. *Karlstad State Bank v. Fritsche*, 392 N.W.2d 615, 618 (Minn. Ct. App. 1986). Here, Plaintiffs assert that Kraemer intentionally failed to disclose the waste in the expansion area and that Kraemer representatives made misleading oral statements regarding the area prior to the sale. Having already concluded that the presence of waste was disclosed in the historical information, the Court rejects Plaintiffs' first assertion.

With regard to the misleading oral statements, section 16.5 of the Agreement provides:

> This Agreement is the final, complete and exclusive statement and expression of the agreement among the parties hereto with relation to the subject matter of this Agreement, it being understood that there are no oral representations, understandings or agreements covering the same subject matter as this Agreement. This Agreement supersedes and cannot be varied, contradicted or supplemented by evidence of any prior or contemporaneous discussions, correspondence, or oral or written agreements of any kind.

Given this integration clause, and the specific disclosure of the waste in the historical information, the Court concludes that any reliance on oral misrepresentations would have been unreasonable as a matter of law. *See Crowell v. Campbell Soup Co.*, 264 F.3d 756, 762 (8th Cir. 2001) (holding reliance on oral representations which contradicted terms of the contract as well as the contract's integration clause were unreasonable as a matter of law). Because Plaintiff cannot establish reasonable reliance, Kraemer is entitled to summary judgment on Plaintiffs' fraud claims.

Plaintiffs next allege claims of fraudulent concealment based on failure to disclose the presence of waste in the expansion area. Fraudulent concealment requires proof of "an

affirmative act or statement which concealed a potential cause of action, that the statement was known to be false or was made in reckless disregard of its truth or falsity, and that the concealment could not have been discovered by reasonable diligence." *Haberle v. Buchwald*, 480 N.W.2d 351, 357 (Minn. Ct. App. 1992). Because the historical information disclosed waste in the expansion area, Plaintiffs could have discovered the alleged illegality in the exercise of reasonable diligence. Accordingly, Kraemer is entitled to summary judgment on the claim for fraudulent concealment.

### C. Reformation claim

Plaintiffs final claim is for reformation of the Agreement. The general criteria for reformation of a written instrument are (1) a valid agreement between the parties expressing their real intentions; (2) a written agreement that fails to express the real intent; and (3) failure to express the real intent due to either mutual mistake of the parties or a unilateral mistake accompanied by fraud or inequitable conduct by the other party. *Leamington Co. v. Nonprofits' Ins. Ass'n*, 615 N.W.2d 349, 354 (Minn. 2000). Plaintiffs maintain that the Agreement should be reformed because Kraemer's fraudulent representations led to Plaintiffs' mistake. Plaintiffs fail to present evidence to show that the Agreement fails to express the real intent of the parties. Furthermore, Plaintiffs' unilateral mistake concerning the waste in the expansion area is not enough to satisfy the third element for reformation absent the additional requirement of fraud or inequitable conduct. Accordingly, the Court grants Kraemer's motion as to Plaintiffs' reformation claim.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Kraemer's motion for summary judgment [Docket No. 93] is GRANTED.

2. Plaintiffs' motion for partial summary judgment [Docket No. 83] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 28, 2004

S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge